Good morning, Your Honors. You know, as you walked in, you looked a little bit from a distance like the Speaker of the House. I have a feeling that my quality of life these days is probably better than his might be, so he's got his hands full. But, Your Honor, I'm not John Boehner, I'm Roger Clark, but thank you for the compliment. I represent Gemini Air Group and Tim Carpay. I understand I have 15 minutes. I'd like to reserve five, if I may, so I'll do my best to contain my initial remarks to 10 minutes. As there was no material dispute in the evidence below between the two witnesses who testified and the exhibits that were admitted before the court, this is essentially a de novo review of three rulings by the district court judge insofar as the district court judge interpreted or failed to interpret the aircraft charter agreement, which had no extrinsic evidence admitted, plus one ruling for abuse of discretion. The four issues before the court or whether the court, district court, failed to grant the motion for judgment as a matter of law and entered judgment in the sum of $56,474.50 for a charter flight, which Gemini performed for jet source to Europe and back to the United States. Two, second issue is whether the court failed and erred in declining to enter judgment, finding that there could be no recovery in negligence by jet source against Gemini. Three, and this is the abuse of discretion issue, is whether the court erred by allowing into evidence the FAA order assessing civil penalty, something that was entered pursuant to a settlement agreement and was done two years after the crucial events in issue. And then finally, whether the court erred in not entering judgment on behalf of Gemini and against jet source for the sum of $529,200 for jet source's improper termination, premature termination of the air charter agreement. Focusing first on the debt of $56,474.50, which was an invoice marked as Exhibit 9 and is before the court's record. This was a flight that Gemini flew in its Challenger 604 jet aircraft from the United States to Europe and making several points of transit within Europe and then flew all the way back across the Atlantic Ocean to the United States on behalf of jet source, on behalf of a customer of jet source. Gemini provided the aircraft, it provided the fuel, it provided the air crew, it provided everything to accommodate that flight. At trial, jet source did not offer any evidence to suggest that those services were not performed. In fact, it was undisputed that those services were indeed performed and that jet source billed its customer, the passengers, and was paid, but yet never paid the invoice which Gemini rendered to jet source. This may be sort of lawyering, pedophoguing, but it occurs to me that you sued for that money based on breach of contract, but you didn't sue based on any theory of unjust enrichment. Is that right? It was only a breach of contract claim, Your Honor. And you're in trouble, it seems to me, suing for breach of contract if at the time of your actions you are yourself in breach. Your Honor, this flight actually took place prior to September 22, 2006, which was the date of the RAM check. So these flights were done, I believe, in July and August. There were, as I understand it in the record, five flights that were done ostensibly as FAR 135s, but they weren't. Were any of those five prior to this flight to Europe? I believe that some of them were, Your Honor. The RAM check, however, took place afterwards. I understand that. But that means the RAM check, if I can say it this way, is when you got caught. But if it is a material breach of the contract to perform these flights purportedly as FAR 135s, but in fact you've only signed them up as 91s, you're in breach. And that means if you've done that before this European flight, you are in breach. Your Honor, I'm going to address that point because that actually is submitted. It's not a breach. But even if it were a breach, Your Honor, this contract has a severability clause associated with it. And under paragraph 4.8 of this aircraft charter agreement, JetSource was obligated to pay all sums due from JetSource to Gemini, and they were, quote, guaranteed by JetSource and shall be paid without notice or demand within 30 days. Moreover, under paragraph 6 of the aircraft charter agreement, JetSource was obligated to provide an accounting within 60 days after the contract was over and settle all accounts. So, Your Honor, at the best case scenario from the standpoint of JetSource, if the district court was going to allow a recovery of $13,200, which was the revenue net profit that JetSource claimed for those five flights, at the best, that $13,200 should have been an offset against the $56,474. And the Court did not offset it. Well, I think I might agree with you if you had pled on Justin Richmond. But you pled breach of contract. Well, we did, Your Honor. But I think that if you interpret the contract and apply the severability clause and you apply the guarantee clause and you look at the contract in toto as the district court was required to do, I think that you have to find that the failure to pay that invoice was indeed itself a breach of contract by JetSource. Although, at the best, JetSource would be entitled to an offset. Your Honor, the second issue has to do with the negligence claim that the Court allowed to go to the jury. And basically, what the Court allowed is for a claim arising between a contract relationship created in a commercial context between two commercial entities that, by its own terms, sets out the full understanding of the parties to create a separate independent duty arising in tort. And, Your Honor, I think that is not the law of California. And, in fact, it's a direct violation of the law of California. The Courts are very clear that when a tort can be pled because of a contractual relationship such as between attorney and client, doctor and patient, or insurer and insured, or employer or an employee, there is a social policy supporting the creation of independent duty. Here, there is no such independent special relationship. The argument has been made that because there were regulations applicable to this that there was created a special duty. Well, the Courts don't go that far. In fact, the California Courts say you have to be cautious and not allow a recovery in tort in a commercial context, for example, because you look at a relationship between a commercial aircraft airframe manufacturer that makes large aircraft and spends a lot of time negotiating complex agreements with the airlines who buy those aircraft and the manufacturer of those aircraft are subject to extensive FAA regulations. So, therefore, if you have a lithium battery problem and you have to ground an aircraft for a period of time and an airline can't fly it, that airline then is going to look to its remedy under the contract. But the danger of this Court's ruling is that now the Court has imported tort duties into that and it's going to create a lot of anxiety and heart murmurs with a whole host of in-house lawyers at places like Boeing and United and American Airlines. Yeah. I'm sympathetic to that argument. On the other hand, as I read, I think it's Section 10 of the contract where you're excluding certain kinds of damages. Yes. One of the kinds of damages excluded is punitive damages and various forms of contract damages and so on. If your argument is right that there should be no tort damage, I'm a little surprised that it wasn't specified in that section. Your Honor, of course, it did say no special damages, no punitive damages, no consequential damages, lots of different kinds of damages excluded. And what it did, Your Honor, is specify what could be recovered and those items that could be recovered were specified, you know, under the contract. So what the district court did basically is do complete violence to the party's freedom to contract because it imported terms into the contract that the party's freedom to contract was specified. And so the district court did not specify that there should be no punitive damages, especially excluded. Because if this ruling is allowed to stand on this point, Your Honor, the district court has a basically merged tort and contract law. And therefore it's not. But was the district court relying on EADS and North American Chemical, which, if I'm correct, was never overruled? It's a 1952 case. My recollection is that the only case that was cited, but it ignores a lot of later case law out of the California Supreme Court that makes it clear that the courts have to be very cautious in applying tort remedies in contract cases. And my recollection is EADS is a personal injury case anyway, not a commercial case. So even under today's law, personal injury, wrongful death type scenario would provide a different social policy to support recovery in tort as opposed to contract. So I think EADS is inapplicable altogether, Your Honor. I know I'm running close on my allotted time. I do want to say very briefly on this allowing the order assessing civil penalty, Your Honor. It was error because, first, it was only marginally relevant. It only specified that there was a regulatory violation on five out of about 300 flights that Jim and I had classified as 91 when it should have been classified as 135. That was a disputed finding. Tim Carpe testified he disagreed with it. He thought it was a right classification, but he entered into a settlement agreement. And as we all know, there's a lot of reasons to enter into settlement agreements. He entered into a settlement agreement two years later. And this was allowed to come in even though it was a settlement. Allowing this end evidence does great violence to the strong doctrine encouraging settlements. Because if participants in FAA proceedings are also involved in concurrent civil proceedings, know that anything that they do by way of settlement or the FAA can impact their proceedings before civil court is going to chill the willingness to settle. That's a very bad road to go down. That's a very familiar problem. I don't know FAA law and custom as well as I know SEC, but that's a very familiar problem to all companies that are accused of wrongdoing in SEC. And you watch those settlements, things may change with the new administration and with the new appointment, but the SEC has been repeatedly criticized for getting these settlements in which there's no admission of wrongdoing. And a reason, of course, that the defendants in those proceedings want to say no admission of wrongdoing is precisely the reason why you're in trouble on this one, because you did admit wrongdoing. Every lawyer in town knows that if you admit wrongdoing, you're likely to have that introduced against you in other proceedings. Well, what's even more significant here, Your Honor, only had marginal relevance, because all it admitted was to a classification of something as a Part 91 when it was supposed to be a Part 135. There was no funding. But that was essentially the claim of breach was that you'd flown these under the category. And that's why it's not a breach, Your Honor, because there was no ---- Let me make my point clear, and then you can respond. Because, as I understand it, you're arguing that it wasn't a breach to fly these as 91s instead of 135s. The other side was arguing that that's precisely why it was a breach. So from the standpoint of the case of the other side, this wasn't marginally relevant. This was the core of the case. And that's why the district court was incorrect in its interpretation of the contract. And this is important. This finding was marginally relevant because the FAA did not make any finding that this was a safety flight issue, did not make any finding that the airworthiness certificate of this aircraft was at risk or had ever been suspended, did not make any finding that the air crew was not qualified to fly this aircraft. This proceeding had nothing to do with Jet Source. Jet Source was never implicated. And there was never any effort or action taken to suspend any certificates at Gemini. So what the counsel for Jet Source essentially did, take something that had only to do with regulatory classification and then at trial was allowed to confuse the jury by suggesting it was indeed a safety of flight issue and that it indeed somehow affected Jet Source when it did not. Because the very contracted issue says that Gemini is an independent contractor. And recognized that there were going to be many flights being flown by Gemini that had nothing to do with Jet Source. So this cries out for the exclusion of this because the counsel for Jet Source at trial was able to characterize this as something that it wasn't. Because the FAA certainly had the ability to say this was a safety of flight issue and did not. Did Gemini during this period have any legal ability to fly 135 flights except for Jet Source? It was under no other 135 agreement. Right. So if you were flying a flight that should have been a 135 and you mischaracterized it as a 91, that was a flight that should have been under Jet Source. Correct. Your Honor, I think that's in dispute under the contract because Gemini was an independent contractor. Now, this was some argument I know at trial as to whether or not you can have multiple 135 agreements. But when you look at the aircraft charter agreement, it was very clear that it was only Jet Source that originated 135 flights through that contract. Yet Gemini retained operational control in all the other instances. And the contract did not specify that Jet Source was the sole originator of part 135 flights. The only thing under the flight laws required by the contract was that Gemini was to report maintenance status. Was there anything not working on the airplane? And flight times. That's the only two things required under the contract. Yet the court then interpreted that by saying you also have to characterize flights as either part 91 or part 135. And that wasn't required under the contract. And the court completely ignored the fact and did not look at this contract in total and looked at what obligations did Gemini have under the contract to provide air crews that were qualified, to provide the fuel, to provide aviation insurance, to provide proper maintenance, to provide an airworthy aircraft. And the evidence doesn't dispute it. All of those things were satisfied. Okay. I apologize. I've taken you over time. The only thing I want to say, Your Honor, then at the end, that, first of all, it was error to admit this order. All right. And if the order did not come in, then there's no evidence to support Jet Source's claim that it had a right to terminate the agreement. But I submit that even if that order had come in, it doesn't constitute a breach under a fair and proper construction of that aircraft charter agreement, which the district court never provided. Okay. And then even if it is a breach, Your Honor, I finally submit it's a minimal, it's not a material breach. And this is important. When you look at the contract in total, all of the obligations which Gemini had satisfied, and that if it was a breach, it was a minor, immaterial breach that could have been corrected simply by an accounting and providing the revenue from those five flights back to Jet Source. And that was the proper remedy, not an outright termination of this agreement. And because the termination of the agreement was improper, it is indeed Jet Source that's in breach and default. And the undisputed evidence was that this aircraft remained ready, willing, able to fly. It was airworthy at all times. It had all the flight crews. Everything was ready to go. And there were approximately 220.5 hours of time guaranteed under that contract by Jet Source that was never used and which Jet Source agreed to compensate unused guaranteed time at $2,400 an hour. And that, when you do the math, it comes out to the $500,000 figure that I mentioned earlier. And, Your Honor, that, I submit, was an error of the district court not to enter judgment in favor of Gemini on that claim. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Alex Thomas-Savick for Appellee Jet Source Charter, Inc., also the plaintiff below. Before I begin any prepared remarks or respond in my prepared fashion, does the panel have any questions or would the panel like me to direct or focus my attention in any scenarios? I have a question for you, Counsel. The only damages that the jury awarded in this case was in connection with the negligence claim, correct? That's correct. Although they found the breach, there was zero damages awarded for either party with regard to any breach of contract claim. Right? Did I get that record right? The jury found that neither party was entitled to recovery on their breach of contract claims. That's correct. Now, in order to have a negligence tort claim, you would have to show that Gemini had some independent legal duty separate and apart from the contract itself. And is your theory here that they have an independent duty to perform competently and they didn't do so because they failed to comply with the FAA regulations? Well, that's part of it, Your Honor. I think, Your Honor, I think What's the other part? Well, Your Honor, I hit the nail on the head when you mentioned the EADS case. Also, there's the North American case that talks about how under California law and with due respect to my colleague, which whom I respectfully disagree, tort and contract remedies can be given and can be granted by a court despite the fact that we're still wrapped up in a contract. There's no inherent problems there. But the independent issue, which was actually But how do you reconcile that statement with the California Supreme Court case of AS, AAS? First of all, AS is distinguishable. It doesn't overrule North American Chemical Company. It also doesn't overrule EADS. In fact, it cites both of those cases with approval. AS was a construction defect case that said, well, because homes purchased by homeowners, not in privative contract with the builder, this is kind of like a product situation and the law of products to which the economic loss rule would normally apply is a rule we're going to apply here to this construction defect issue. It did not overrule North American. As I said, it cited North American. And as of today, North American is still good law in our State of California because it says pretty explicitly when it's a service contract. Or even if there is privity or not privity, we're going to provide an exception to the economic loss rule. We're going to allow, in other words, plaintiffs such as Jet Source to recover on tort and or negligence theories. Is there any good reason for limiting the rationale of AS to construction defect cases? Well, I think it's already been limited. And, yes, I think because what they were worried about in AS was when you have no privative contract, when you have a large industry such as the construction industry, home building, a big turner of our economy, that we needed to be worried about unfettered theories and confusing of juries. Those kinds of concerns were never at issue and are not at issue when we're dealing with two sophisticated parties at arm's length here in the commercial aviation industry having to do with very sophisticated, very wealthy individuals and well-heeled people. So, yes, the courts have limited AS to the construction defect industry. And the flip side of that is the courts have said explicitly, and that is the law today, that when it's a service contract like we had here, that both theories, tort and contract, are permissible. I'm sorry, Judge Fletcher. Can you give me that case that you're relying on that you say courts have limited to the construction defect? Because there are plenty of cases that have foreclosed tort remedies based on breach of contractual duties in a variety of contexts outside the construction defect scenario. They have, Your Honor. We've cited them in our briefs. I want to point out that Elric v. Meneves is the California Supreme Court case that cited the North American Chemical Company case with approval. Of course, Oz v. Superior Court cited the North American Chemical case with approval. The Celebrated Treatise, I'll note, is a treatise. Witkin, Summary of California Law, cites the North American case at Section 1516 of the most recent iteration of that treatise. And as well, City and County of San Francisco v. Cambridge Integrated Services Group, 2007, Westlaw 1970092, a case out of the Northern District of California, 2007 case, has limited or has observed, I should say, that Oz is best fit for a construction defect case and found Oz no impediment to allowing recovery in that case as well. Thank you. I want to ---- Help me understand your theory, because I read a lot in this case. I confess I didn't read every piece of paper. But help me understand your theory as to why your client has incurred this $13,200, if that's the right number, in tort damages. What was the ---- How did that happen? I don't want sort of theoretical talk about contract versus tort. I want, what are you complaining about? Certainly, Your Honor. At the expense of getting in the head of the jury who had the special verdict form that the parties agreed to and never objected to, which is where the $13,200 claim came from. So I don't think any argument as to the special verdict form can be entertained here. It would be way ---- But to answer your question more directly, the theories that were put forward by Jetsource were that ---- And it also touches on why the breach was material when we get to the breach of contract analysis, was that what happened here was Gemini was going behind the back of Jetsource and was taking clients or attempting to take clients, including George Plews, one of the most important clients of Jetsource. There was also an issue as to whether or not the planes were unavailable. The series of events that Gemini put in motion, how Gemini asked us to second-guess the judgment of the jurors on, was that we put in jeopardy Jetsource's very valuable certificate to operate charter flights with the FAA, a certificate that covered sometimes eight planes, sometimes 14 planes. And so when Gemini did what they did, Jetsource was worried that their citation or their certificate would be revoked and had to, as they were allowed to under the contract, take the plane, the Challenger 604, off of their certificate. That made that plane unavailable. And there was testimony in the record, substantial testimony, which has to be, of course, red and white, most favorable to Jetsource, that, you know, there was time and imagination spent in trying to find replacements, that Jetsource's business was only growing and that they would have met and needed 250 hours on the Challenger and that they had to, at some point, go and find different planes because they no longer had a Challenger on their payroll on their certificate. So the jury had adequate evidence, and there's plenty in the records for the jury to have sunk its teeth into, for lack of a better term, to come up with that $13,200 figure. But admittedly, I can't produce a piece of paper that adds up to $13,200. The jury does mysterious things sometimes. What do you do, and I'm going to come back to Judge Wynn's question, with the jury having found there's no breach of contract, yet nonetheless there's tort liability? It sounds like everything you're talking about was also a breach of contract. Your Honor, a contract can give rise to tort liability. That's what the North American chemical case talks about. So they can be coterminous. There would also be tort liability if there was an independent duty. And there was significant argument below, considered by Judge Sanmartino and entered into evidence, of an independent duty, perhaps not written in the contract, but for, in general, Gemini not to do anything that could jeopardize JetSource's valuable license with the FAA, and therefore jeopardize not just the operations of the Challenger 604, but the up to 14 other planes that JetSource relied on as part of its business. And that it set into motion a series of events that jeopardized that. JetSource had no other choice other than to take it off the list, lest they draw the ire of the FAA. By the way, the FAA thinks this is a very important issue. They spent 17 months investigating this. They issued that order. They found that Mr. Carpe would be liable for $40,000 in damages, but then reduced it to 5. And this is a very important issue. So the jury had a hook, in other words, for finding an independent duty, a duty independent of the contract, if, in fact, they needed to do that, which they didn't, because, like I said, the North American case says that we can find duties in the contract as well. The last of my comments would be with respect to what was Exhibit 15 below the FAA order and my colleague's arguments that it was an abuse of discretion to admit that piece of evidence. We need to make it clear that Judge San Martino issued or gave a limiting instruction on that. And the law presumes, as it must, that when you give a limiting instruction, the jurors are presumed to have followed it. Also, it wouldn't be prejudicial to have admitted that exhibit because there was plenty of evidence outside of that exhibit to have sustained or provided substantial evidence for upholding the jury's verdict anyway. For instance, Mr. Carpe admitted on the stand that he had violated or he actually, to be very clear and be very fair, he admitted that he had no problem with what the FAA ultimately did personally, not just as a matter of settlement, but personally, he believed that, in the end, he had run afoul of the FAA's rules regarding Part 91 and Part 135 flights. So even if we get to a potential abuse of discretion, it wouldn't have mattered in this case, and therefore ---- Refresh my memory as the limiting instruction the district judge gave with respect to the FAA document. Certainly, Your Honor. I'm going to paraphrase. I don't have it written out in front of me. But the limiting instruction was to the effect of, no, you're going to consider this. This is not conclusive. You may consider this. You may not consider this. This is not conclusive evidence of the breach. It is merely a factor that you may or may not in your discretion decide is evidence of the breach. That was the long and short of it, Your Honor. If you need it, I can grab it. Any other questions? Thank you. Thank you. Of course, we ask that the verdict is ---- We ask that you find that the verdict is supported by substantial evidence and that you uphold it in full. Thank you very much. Your Honor, do I have a couple minutes? Yeah, go ahead. Yes. Thank you. Your Honor, very briefly, the arguments that we heard about damages being based upon the request for admissions in the testimony of Megan Cunningham, JetSource's own witness, that they never identified any loss of customers or any loss of revenues because of the unavailability of the plane. The argument that JetSource's certificate was put in jeopardy because of this ramp check, again, that's utter speculation because this is how the order assessing civil penalty, which only found a regulatory violation, was misconstrued. The undisputed evidence was JetSource was never the subject of any investigation. Its certificate was never the subject of any scrutiny or analysis by the FAA. This was totally related only to Gemini and nothing to do with JetSource. The argument that it had no other choice but to immediately terminate the contract, again, is utter speculation. The only thing that happened on September 26th was a ramp check, which happens from time to time in the FAA. The limiting instruction, Your Honor, was not a limiting instruction in the classic sense. It is actually an authorizing instruction because it allowed the jury to consider this, not telling the jury not to consider it, and all the testimony that counsel referred to to go back to the proverbial fruit of the poisonous tree related to an examination, a cross-examination of Tim Carpe over this order assessing civil penalty. And the final point, Your Honor, if this action by the FAA, limited solely to Gemini, would be deemed to be a breach of contract between a contract between JetSource and Gemini, it would be equivalent to a homeowner hiring a general contractor, who is an independent contractor, who is also doing work for another homeowner across town. And in that other home across town, OSHA comes in and assesses a civil fine because that general contractor didn't have enough barricades up at the work site. If that would be a basis for the first homeowner to claim breach of contract with the general contractor, then that is where this case would take us. And I submit that that is not a breach of contract, and it would be wholly inappropriate to allow it to constitute a breach of contract. Thank you, Your Honor. Thank you. The matter is submitted.
judges: Pregerson, Fletcher, Nguyen